UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| YAMIL MORALES, ) | |
| ) | |
| Plaintiff, ) | 2:11-CV-02102-LRH-RJJ |
| ) | |
| v. ) | |
| ) | ORDER |
| ARIA RESORT & CASINO, LLC, ) | |
| ) | |
| Defendant. ) | |

Before the court is Defendant's Motion to Dismiss (#9[1]). Plaintiff filed an opposition (#18), and Defendant replied (#20).

## I.   Facts and Procedural History

This action arises out of an Las Vegas casino's alleged misconduct in its attempt to collect on an unpaid gambling debt. On May 21, 2010, Plaintiff Yamil Morales, a citizen and resident of Mexico, applied for and received $500,000 in gambling credit at the Aria Resort and Casino through the issuance of markers.

Following standard industry practice, Morales completed a credit application setting forth, *inter alia*, the name, address, routing number and account numbers at his bank. In conjunction with the application, Morales also signed seven markers totaling $500,000—five for $50,000, one for

---

[1] Refers to the court's docket entry number.

$100,000, and one for $150,000. The date and bank information were left blank. Pursuant to the terms of the credit application that Morales signed, he authorized Aria to complete the required information on the markers, including the date, bank account and electronic encoding, and he authorized Aria to draw the marker on "any account from which I now or may in the future have the right to withdraw fund, [sic] regardless of whether that account now exists, and whether I provided the information on the account" to the casino. Morales further certified that at the time he signed the markers, he had sufficient funds on deposit to pay the markers upon demand or presentment. Morales also waived "any requirement of presentment." The application further contained a warning that the markers are "identical to a personal check" and that drawing or passing a marker "knowing that there are insufficient funds in an account upon which it may be drawn, is a crime in the State of Nevada which may result in criminal prosecution in addition to civil proceedings to collect the outstanding debt."

During his visit to the casino, Morales lost approximately $500,000. He then departed for his home in Mexico without paying the debt outstanding.

Morales alleges that on or about November 15, 2010, Aria unsuccessfully attempted to redeem the markers. It completed the required information, including the date and bank information, and it presented the markers for payment with the bank specified in Morales' credit application but on different account numbers than the two that Morales listed. Morales alleges that the account on which the markers were presented had been disclosed by him to a different casino "long ago" and had been closed approximately seven years earlier. Accordingly, the bank returned the markers for the reason that the account was closed.

Morales alleges that Aria then referred the matter to the Clark County District Attorney's Office. On March 21, 2011, the District Attorney's office issued to Morales a letter titled "Notice of Bad Checks," which indicated that it "has received . . . bad check(s) for prosecution," listed the seven Aria markers, noted that passing bad checks is a crime under NRS § 205.130, and threatened

criminal prosecution unless Morales submitted full payment of the $500,000 in checks, plus "statutory administrative and penalty fees" totaling $50,200. Morales also received a second letter, dated July 28, 2011, proposing that Morales stipulate to pay $530,200 under a payment plan to avoid criminal prosecution. Morales did not agree to the stipulation and has not paid the outstanding debt.

On November 17, 2011, Aria filed a civil lawsuit against Morales in state court on the $500,000 debt. That lawsuit is apparently still pending.

On December 28, 2011, Morales countered by filing this lawsuit against Aria in federal court on the basis of diversity jurisdiction. The Complaint (#1) includes claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) abuse of process, (4) defamation, and (5) extortion. Morales also includes a sixth claim for declaratory relief that is derivative of the five substantive claims. Aria now moves to dismiss all claims.

## II.    Legal Standard

To survive a motion to dismiss for failure to state a claim under FRCP 12(b)(6), a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common

sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).

### III.   Discussion

#### A.  Breach of Contract

Morales alleges that the credit application and markers constitute a contract that imposed upon Aria the duties to present the markers in a timely fashion and against the accounts specified by Morales in his credit application. Morales further alleges that Aria breached these duties by presenting the markers after they had become stale 90 days after their issuance and against closed accounts that were different than the ones he specified.

To the extent Morales' breach of contract claim is predicated on an omission—specifically, Aria's *failure* to present the markers for payment within 90 days and against the specified accounts—the claim fails because the contract includes no terms requiring Aria to ever present the

4

markers for payment. Indeed, in executing the credit application, Morales expressly agreed to "waive any requirement of presentment." Markers are merely instruments for collecting on a gambling debt, as distinct from the debt itself, and redeeming a marker is not the only means by which a gaming establishment may seek to collect on an outstanding debt.

Morales' complaint can also be construed, however, to allege breach of contract based on Aria's actual presentment of the markers after they had allegedly become stale and on closed accounts. Morales contends that once Aria decided to present the markers, it was required to do so in a timely fashion and against valid accounts. While the credit application contains no time frame for presentment, Morales contends that the markers are considered to be checks, *see Nguyen v. Nevada*, 14 P.3d 515, 518 (Nev. 2000), and that as such they became stale 90 days after their date, which in the case of an undated check is the date of issue, citing NRS §§ 104.3113(2), 104.3304(1)(b). Also, while the credit application expressly authorized Aria to draw the markers on accounts other than those specified by Morales in the application, Morales contends this authorization did not extend to accounts that had been closed years earlier, but only accounts that Morales "now or may in the future have the right to withdraw funds."

Although Aria contests Morales' theories of duty and breach, the court need not resolve this dispute. As Aria alternatively contends, even if Morales' theory were correct, he fails to state a claim for breach of contract because he has failed to allege that he suffered any actual damages as a result of the alleged breaches. *See Eaton v. J. H. Inc.*, 581 P.2d 14, 17 (Nev. 1978); *Richardson v. Jones*, 1 Nev. 405, 408 (1865). Morales' prayer for compensatory damages of $500,000 for breach of contract is both inexplicable (it is Morales who borrowed and has failed to repay $500,000 in gambling debts to Aria) and unsupported by any factual allegations whatsoever as to the occurrence of such injury or its nexus to any alleged breach. The breach of contract claim shall be dismissed accordingly.

5

### B. Abuse of Process

The tort of abuse of process requires "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Kovacs v. Acosta*, 787 P.2d 368, 369 (Nev. 1990). Here, Morales alleges that the District Attorney, acting as Aria's agent, issued process in the form of a notice of bad checks that threatened criminal prosecution, and that such process was issued "without justification" and with the ulterior purpose of obtaining "the payment of an obligation that had become void and unenforceable."

Such allegations are inadequate for several reasons. To begin, it was the District Attorney, not Aria, that issued the allegedly unjustified "process" at issue here. And Morales' conclusory allegations that the District Attorney was somehow subject to Aria's control as its agent is implausible and not entitled to a presumption of truth in the absence of factual content supporting such an allegation. The mere facts that Aria reported the returned markers to the District Attorney and that the District Attorney acted upon the report are insufficient to establish that Aria exercised control over the District Attorney's decision to act on a reported criminal offense.

But even if Aria were responsible for the issuance of the Notice of Bad Checks, the necessary elements are still missing. First, Morales fails to allege an ulterior purpose other than resolution of a legal dispute. Indeed, the *overt* purpose of the Notice of Bad Checks issued to Morales was to resolve the bad check issue short of criminal prosecution by obtaining payment of the underlying debt obligation to Aria. *See Rashidi v. Albright*, 818 F. Supp. 1354, 1359 (D. Nev. 1993). Second, Morales has made no allegation that the issuance of the letter and demand for payment under threat of criminal prosecution was not proper in the regular conduct of a criminal bad check proceeding by the District Attorney. It is well-established that the securing of gambling credit on markers that are unsupported by sufficient funds may be referred to the district attorney for criminal prosecution under Nevada's bad check statute, NRS § 205.130. *See Nguyen*, 14 P.3d

6

1  at 517-18; *Fleeger v. Bell*, 95 F. Supp. 2d 1126, 1131 (D. Nev. 2000).

2      Morales instead seeks to argue the merits of the proceeding in which the process was issued by alleging that the debt obligation sought to be collected "had become void and unenforceable" and that the Notice of Bad Checks was issued "without justification." Such allegations are predicated upon the same arguments asserted in support of Morales' breach of contract claim—the markers had become stale and were issued on the wrong accounts. But both arguments are unavailing. Morales first erroneously conflates the markers with the debt. Even if the markers are now unredeemable because Aria failed to timely or correctly present the markers for payment, that says nothing of the validity or enforceability of the underlying $500,000 gambling debt. Also, while Morales makes much of Aria's presentment of the markers on the "wrong" accounts, it does not follow that the markers were not in fact "bad" checks subject to referral for criminal prosecution. Significantly, the complaint includes no factual allegations that the markers were adequately backed by sufficient funds on deposit in the "right" accounts listed in the credit application and that the markers would have been honored had they been presented on those accounts. Unless that was the case, the markers would have been "bad" checks from the inception, regardless of presentment or any mistakes in presentment. Because the complaint includes no allegations that the markers were "good" checks backed by sufficient funds in the listed accounts, the court declines to accept as true Morales' conclusory allegation that the threat of criminal prosecution was unjustified.

    Finally, despite Morales' attempt to argue damages in his opposition brief, his complaint includes no factual allegations that he suffered any injury as a result of the alleged abuse of process.

    For all these reasons, Morales fails to state a viable claim for abuse of process.

**C. Defamation**

    The elements of a defamation claim are "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault,

7

amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).  A false statement involving the imputation of a crime is considered to be defamatory per se and therefore actionable without proof of damages.  *Id.*

Here, Morales alleges that "Aria, acting through its legal department, has made and repeated numerous false statements about Sr. Morales to the effect that he committed a criminal offence against Aria." Morales further alleges that these false statements were made to "members of the public, the staff of Aria, the staff of other casinos, the staff of the office of the District Attorney, customers of Aria who are members of the general public to whom Sr. Morales is known, and citizens of Mexico who are members of the general public to whom Sr. Morales is know."

The court finds that Morales has failed to include in his complaint sufficient factual allegations to establish that the alleged defamatory statements were, in fact, false.  As discussed above, Morales has failed to allege that the markers were "good" checks because he had on deposit in the listed accounts sufficient funds to pay the markers upon demand or presentment.  Unless that was the case, any statements by Aria that Morales had committed a criminal offense by passing bad checks were true.  *See* NRS § 205.130; *Nguyen*, 14 P.3d at 517-18; *Fleeger*, 95 F. Supp. 2d at 1131.

Other deficiencies also require dismissal of Morales' defamation claim.  For instance, any statements made to Aria employees are also not actionable, as Aria's communications with its own employees are not publications to third parties.  Also, any statements made to the District Attorney's office concerning the commission of a criminal offense are absolutely privileged as preliminary to judicial proceedings.  *See Fink v. Oshins*, 49 P.3d 640, 644 (Nev. 2002); *Circus Circus Hotels v. Witherspoon*, 657 P.2d 101, 104 (Nev. 1983); *cf. Pope*, 114 P.3d at 282-83 (holding that informal complaints to police officers are protected only by a conditional, not absolute, privilege because such statements are not properly deemed to be preliminary to a judicial proceeding).

As for the other alleged recipients of Aria's allegedly defamatory communications, the court finds that Morales' allegations are too vague to state an actionable claim for defamation. His allegations are the rough equivalent of alleging that Aria made defamatory statements to somebody, somewhere. Notwithstanding the flexibility of the Rule 8 pleading standard, such allegations constitute little more than labels and conclusions or a formulaic recitation of the elements. As such, they give the defendant insufficient notice of the allegations against it and are not entitled to a presumption of truth by the court.

Morales' defamation claim will be dismissed accordingly.

**D. Extortion**

Morales next claims that Aria committed extortion by having the District Attorney threaten criminal proceedings against Morales to force him to pay a gambling debt that was invalid and unenforceable. Morales contends that such conduct constitutes extortion within the meaning of Nevada's criminal statute, NRS § 205.320, and that it is actionable under the common law.

As Aria contends, however, NRS § 205.320 provides no express private right of action for extortion, and Morales has failed to cite any Nevada authority recognizing extortion as a viable cause of action under the common law. Generally, "when a statute does not expressly provide for a private cause of action, the absence of such a provision suggests that the Legislature did not intend for the statute to be enforced through a private cause of action." *Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007); *cf. Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 423-24 (Iowa 1977) (recognizing a private right of action for extortion despite the general rule only because an Iowa statute overrides the ordinary common law rule).

Moreover, even if the action was recognized, Morales has failed to state a claim for extortion because his premise that Aria sought to obtain payment on an invalid and unenforceable debt is unsupported by the factual allegations in the complaint, as discussed above.

9

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

Morales alleges that Aria breached its duty of good faith "when it delinquently presented [the markers] against the Wrong Accounts and when it wrongfully attempted to extort payment from Sr. Morales by soliciting the services of the District Attorney to collect on the markers." In other words, this claim is predicated upon the same allegations and arguments already discussed and rejected above. Also, as with Morales' other claims, he once again fails to include any allegation that he incurred damages as a result of the alleged breaches. The claim will be dismissed accordingly.

### F. Declaratory Relief

Morales' sixth and final claim for declaratory relief is merely derivative of his other five claims for relief. Given the dismissal of those claims, there are no issues remaining for the issuance of declaratory relief. The claim shall be dismissed accordingly.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (#9) is GRANTED. Plaintiff shall have 30 days to file an amended complaint, if he chooses to do so.

IT IS SO ORDERED.

DATED this 10th day of September, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE