UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| YAMIL MORALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:11-CV-02102-LRH-NJK |
| ) | |
| ARIA RESORT & CASINO, LLC, ) | |
| ) | ORDER |
| Defendant. ) | |
| ) | |
| ARIA RESORT & CASINO HOLDINGS, ) LLC dba ARIA, ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| YAMIL MORALES aka ) YAMIL MORALES ARAMBURO, ) | |
| ) | |
| Counterdefendant. ) | |

Before the Court is Defendant and Counterclaimant Aria Resort & Casino's ("Aria") Motion for Summary Judgment. Doc. #38.[1] Plaintiff and Counterdefendant Yamil Morales ("Morales") filed an Opposition (Doc. #39), to which Aria replied (Doc. #40).

///

///

---

[1] Refers to the Court's docket number.

I.      **Factual Background**

This action arises out of Aria's efforts to collect on Morales' unpaid gambling debt. On May 21, 2010, Morales, a citizen and resident of Mexico, applied for and received $500,000 in gambling credit at the Aria through the issuance of casino markers.[2]  Doc. #38, Ex. 4; Doc. #38, Ex. 3, 14:24-15:5, 16:4-6. Following standard industry practice, Morales completed a credit application setting forth, *inter alia*, the name and account numbers at his bank. Doc. #39, Ex. 1, ¶3; Doc. #39, Ex. A.[3] In conjunction with the application, Morales also signed seven markers totaling $500,000—five for $50,000, one for $100,000, and one for $150,000. Doc. #38, Ex. 2; Doc. #38, Ex. 3, 14:24-15:5. The date and bank information were left blank. Doc. #38, Ex. 2. Pursuant to the terms of each marker, Morales acknowledged:

> receiving the above amount and I have funds on deposit in accounts on which I am an authorized signatory for all purposes, without restriction, sufficient to pay this negotiable instrument marker upon demand. I authorize ARIA to obtain my financial information from any source and complete this marker as is necessary for the marker to be presented for payment. I agree (1) to pay all costs of collection, including attorney's fees, (2) to pay interest at the rate of 18%, unless prohibited by Nevada law, and in which case at the highest amount permitted by Nevada law, from

---

[2] A casino marker is "an instrument, usually dated, bearing the following information: the name of the player; the name, location, and account number of the player's bank; and the instruction 'Pay to the Order of' the casino for a specific value in United States dollars. The marker also contains a stipulation whereby the payor represents that the amount drawn by the marker is on deposit in the referenced financial institution, and that he guarantees payment. The player and a casino representative sign the marker. The player then exchanges the marker for gaming tokens or 'chips,' which may be exchanged for currency with the casino cashier.

When a patron has concluded play, he either pays the full amount of the marker he has obtained or leaves the casino with the marker outstanding. If the marker remains outstanding, casino personnel attempt to notify the patron and, after a specified period of time, submit the marker to the patron's bank for collection. Should the bank account contain insufficient funds, the casino will again attempt contact with the patron. If payment is not forthcoming, the gaming establishment has the option to refer the customer for possible criminal prosecution." *Nguyen v. State*, 116 Nev. 1171, 1173 (2000).

[3] Morales disputes the authenticity of the credit application, submitted by Aria as Exhibit 4. *See* Doc. #39, Ex. 1, ¶4. While Morales admits that the signatures on Exhibit 4 appear to be his signatures, he believes that the credit application he signed was "an integrated, singular document with the proper [bank] account numbers stated therein." *See id.*

2

1    the date of issuance of the marker or dishonored by a financial institution, (3) to
     waive any requirement of presentment, (4) that Nevada law exclusively applies to
2    this marker and (5) the exclusive jurisdiction for any dispute relating to this marker
     shall be a federal or state court situated in Clark County, Nevada.  A credit
3    instrument is identical to a personal check.

4  Doc. #38, Ex. 2.  Moreover, pursuant to the terms of the credit application that Morales signed, he

5  authorized Aria:

6    to complete any of the following information on [the] markers: (1) name of payee,
     (2) a date, (3) name, account number and/or address of any of my banks and
7    financial institutions, (4) electronic encoding of the above, and (5) as otherwise
     authorized by the law.  The information inserted may be for any account from which
8    I now or may in the future have the right to withdraw funds, regardless of whether
     that account now exists, and whether I provided the information on the account to
9    [Aria].

10  Doc. #39, Ex. A; Doc. #38, Ex. 4.  Morales also certified that at the time he signed the markers, he

11  had sufficient funds on deposit to pay the markers upon demand or presentment.  *Id.*  Morales also

12  waived "any requirement of presentment."  *Id.*  The application further contained a warning that the

13  markers are "identical to a personal check" and that drawing or passing a marker "knowing that

14  there are insufficient funds in an account upon which it may be drawn, is a crime in the State of

15  Nevada which may result in criminal prosecution in addition to civil proceedings to collect the

16  outstanding debt."  *Id.*

17         During his visit to the Aria in May 2010, Morales lost approximately $500,000.  Doc. #38,

18  Ex. 3, 15:3-7.  Shortly thereafter, he departed for his home in Mexico without paying the debt

19  outstanding.  Doc. #38, Ex. 3, 16:19-24.  On November 15, 2010, Aria unsuccessfully attempted to

20  redeem the markers.  Doc. #39, Ex. 1, ¶7.  It completed the required information, including the date

21  and bank information, and it presented the markers for payment with the bank specified in Morales'

22  credit application, but on different account numbers than the two that Morales listed.  Doc. #39,

23  Ex. 2; Doc. #39, Ex. 1, ¶7.  The accounts on which the markers were presented had been previously

24  specified by Morales to a different casino and had been closed approximately seven years earlier.

25  Doc. #39, Ex. 1, ¶7.  Accordingly, the bank returned the markers for the reason that the account

26  was closed.  Doc. #39, Ex. 2; Doc. #39, Ex. 1, ¶7.

1         On January 4, 2011, Aria sent a letter to Morales informing him that the markers were
2    unsuccessfully presented for collection and urged him to make arrangements for payment of the
3    debt.  Doc. #38, Ex. 5.  Thereafter, the matter was referred to the Clark County District Attorney's
4    Office.  Doc. #39, Ex. 1, ¶9; Doc. #38, Ex. 3, 16:11-12.  On March 21, 2011, the District
5    Attorney's office issued to Morales a letter titled "Notice of Bad Checks," which indicated that it
6    "has received . . . bad check(s) for prosecution," listed the seven Aria markers, noted that passing
7    bad checks is a crime under NRS § 205.130, and threatened criminal prosecution unless Morales
8    submitted full payment of the $500,000 in checks, plus "statutory administrative and penalty fees"
9    totaling $50,200.  Doc. #39, Ex. B.  Morales also received a second letter, dated July 28, 2011,
10   proposing that Morales stipulate to pay $530,200 under a payment plan to avoid criminal
11   prosecution.  Doc. #39, Ex. C.  Morales did not agree to the stipulation and has not paid the
12   outstanding debt.  Doc. #39, Ex. 1, ¶10; Doc. #38, Ex. 3, 16:19-17:2.
13        On December 28, 2011, Morales filed the present lawsuit against Aria on the basis of
14   diversity jurisdiction.  Doc. #1.  The Complaint includes claims for (1) breach of contract,
15   (2) breach of the implied covenant of good faith and fair dealing, (3) abuse of process, (4)
16   defamation, and (5) extortion.  Doc. #1.  Morales also includes a sixth claim for declaratory relief
17   that is derivative of the five substantive claims.  Doc. #1.  On March 23, 2012, Aria filed an
18   Answer and Counterclaim against Morales, alleging claims for (1) breach of instruments and (2)
19   statutory damages pursuant to N.R.S. §41.620.  On September 10, 2012, the Court dismissed
20   Morales' Complaint in its entirety for failure to state a claim.  Doc. #24.  The Court gave Morales
21   an opportunity to amend his Complaint within 30 days, but Morales declined to do so.  Doc. #24.
22    On July 30, 2013, Aria filed the present Motion for Summary Judgment as to its Counterclaim
23   against Morales.  Doc. #38.
24   ///
25   ///
26   ///

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). On an issue as to which the non-moving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a

scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III.   Discussion**

Morales avers that there is a genuine dispute over which credit agreement he signed, thereby precluding summary judgment. The Court disagrees. Both Aria and Morales' versions of the credit application contain the operative contractual language on which this case turns. Thus, even if the Court accepts Morales' unsigned version of the credit application in which he lists two bank account numbers (Doc. #39, Ex. A), the legal analysis remains unchanged. Accordingly, the Court proceeds to determine whether Aria is entitled to summary judgment on its claims for breach of instruments and statutory damages.

As to Aria's claim for breach of instruments, the Court finds that summary judgment is appropriate. As a preliminary matter, the Court notes that the markers are "credit instruments," which "are valid and may be enforced by legal process."[4] Nev. Rev. Stat. § 463.368(1); *see also In re Miller*, 292 B.R. 409, 414 (B.A.P. 9th Cir. 2003) (finding that a casino marker is a credit instrument pursuant to Nevada Revised Statute § 463.368(1)). Moreover, both the credit application and the markers are contracts, under which Morales had a duty to pay. *See Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135 (Nev. 1987) (finding that "[a] breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement"). To this end, Morales admits that he signed the seven markers to Aria, that he received valid consideration in exchange for each of the markers, and that he has failed to repay his $500,000 debt to Aria. Doc. #38, Ex. 3, 14:24-15:11, 16:19-17:2, 21:3-19. Accordingly, the Court finds that Morales is liable to Aria as a matter of law for failure to repay the $500,000.

Morales counters that, pursuant to the terms of the credit application, Aria had "an express, or at a minimum, implied" duty to present the markers against only those accounts specified by Morales in his credit application. *See* Doc. #39, p. 7. Aria's failure to present the markers against

---

[4] The parties do not dispute the applicability of Nevada law to this action.

6

those accounts specified by Morales in his credit application, Morales asserts, constitutes a material breach of the credit application agreement, thereby relieving him of his contractual obligation to perform under the marker agreements. *See* Doc. #39, pp. 6-9. The Court disagrees. As Aria points out, Morales' assertion that Aria breached the credit agreement when it allegedly presented the markers to the wrong accounts is nothing more than a refashioning of his breach of contract claims, which the Court already dismissed. *See* Doc. #24. As the Court previously explained, the contracts at issue do not contain any terms requiring Aria to ever present the markers for payment. *See* Doc. #24, pp. 5-6. In executing the credit application and the marker agreements, Morales expressly agreed to "waive any requirement of presentment." Additionally, Morales admitted in his deposition that there is nothing in his agreements with Aria that required Aria to present the markers to his bank for payment. *See* Doc. #38, Ex. 3, 17:3-6. Indeed, markers are merely instruments for collecting on a gambling debt, as distinct from the debt itself, and redeeming a marker is not the only means by which a gaming establishment may seek to collect on an outstanding debt. *See* N.R.S. §463.368 (enforceability of markers under Nevada law is not dependant on presentation). Accordingly, Morales' "defense" related to presentment does not raise a triable issue of fact. Nor does it preclude summary judgment in favor of Aria.

As to Aria's claim for statutory damages, the Court also finds that summary judgment is appropriate. Nevada Revised Statute 41.620 provides that:

> any person who: (a) Makes, utters, draws or delivers a check or draft for the payment of money drawn upon any financial institution or other person, when that person has no account with the drawee of the instrument or has insufficient money, property or credit with the drawee to pay . . .
>
> and who fails to pay the amount in cash to the payee, issuer or other creditor within 30 days after a demand therefor in writing is mailed to the person by certified mail, is liable to the payee, issuer or other creditor for the amount of the check, draft or extension of credit, and damages equal to three times the amount of the check, draft or extension of credit, but not less than $100 nor more than $500.

///

///

1  Here, Morales executed seven markers. Aria attempted to collect on those unpaid markers, but they
2  were returned dishonored. On January 4, 2011, Aria mailed a demand letter to Morales, requesting
3  payment of the dishonored and returned markers. Because Morales' debt remains unpaid, Aria is
4  entitled to additional statutory damages of $500 per unpaid marker, for a total of $3,500.00.

5      In summary, Aria is entitled to $500,000, plus interest in the amount of 18% from the date
6  of issuance of the markers. Additionally, Aria is entitled to $3,500.00 in statutory damages.
7  Should Aria seek to recover the costs of collection, it may file a motion for attorney's fees and costs
8  in compliance with Local Rule 54-16.

10      IT IS THEREFORE ORDERED Aria's Motion for Summary Judgment (Doc. #38) is
11  GRANTED. The clerk of court shall enter judgment in favor of Aria and against Morales in
12  accordance with this Order.

13      IT IS SO ORDERED.
14      DATED this 7th day of February, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE